on our calendar today is a layman versus or pharmaceutical number 1934 86 good morning this is Richard Canelo rookie groupie on behalf of plaintiff's appellants George Lehman and insured benefit plan eight appearing with me is Megan Sullivan we please report we have a somewhat of a unusual situation as the defendants have largely abandoned the district court's reasoning for dismissing plaintiff's complaint in the motion to dismiss the defendants filed before the district court they solely argued the plaintiff's claim should be dismissed because the speakers genuinely believe their opinions and therefore the opinions were not false that is essentially the same reason that abandoned this argument and are addressing the arguments that the plaintiffs made to the district court regarding the 2015 decision by the Supreme Court in the Omnicare case which set forth a new standard which sets forth and under what circumstances statement of opinion may be actionably false or misleading the abandonment of the district courts reasoning for dismissing on its place below is essentially a tacit admission that the I know that many issues have been raised in the briefing court opinion district courts first of the first part of her analysis focuses on whether the omission of a particular information failures that would potentially undermine certain optimistic predict projection and she focuses on the raw misrepresentation or omission and you know there's a second section I enter and whether the allegations were sufficient to support that but I don't understand the defendant to have been to abandon the district court analysis on misrepresentation or omission are you saying something different because if you parse through the rest of the decision you'll see that the court is really dealing with misrepresentation as opposed to omission and she talks about it and I want to be clear that during the motion of dismiss briefing below the defendants if you could look at their entire brief we've submitted it for this purpose they only argued they solely argued that the opinions were not false there's nothing in the opening brief that says the opinions were not misleading so when the court is talking about misrepresentations and not talking about opinions in the court when she talks about on the care she never discusses the circumstances that the Supreme Court has identified would allow an opinion to be actually misleading Maybe it would be useful if my colleague could speak for you to address that about whether a reasonable investor would have wanted to have the information that was omitted from the statements of opinion that the defendant made and that you rely on in your complaint if you believe that's the correct standard to apply because we can address the complaint and affirm for the matter of law here we can affirm on any ground it might be presented and the district court was somewhat off on you know how to answer analyzed or the omissions or representation if you tell us how I'm not sure we should treat the briefing that's as early as admission of anything yes your honor so we can sort of we alleged or the plaintiffs have alleged that they were three broad categories of opinion that were actually misleading the first of these categories are the defendants statements that they made about another company's trials of squalor me the drug issue in the case generic corporation ran a series of trials where it tested squalor me which was known by a different name at the time in patients who suffer from wet AMD which is a disease which often leads to blindness difficulty in central vision in the eye now the categories we've listed the statements where they talked about how or at least the defendants at or opine on the trial results by another company so they indicated that the trial results basically were positive and demonstrated that their visual acuity gain and if your market improved if they were improved visual outcomes and a however the people who ran the trial came to a completely different conclusion they concluded that the trial did not demonstrate that there was a biological effect in the trial for the drug and as a result of that they terminated the trial you're talking about how they have this statement made with regard to how with the genera trial results were that's my right understanding or if I just understood yes I'm still focusing on the generic the generic trial statements because in a situation where generic corporation ran a set of trials they determined that the trials fail they determined that the drug did not show a and part of the reason for that was because there was a newly approved FDA drug you sent us which became the standard of care is currently still the standard of care for patients with this disease so the people who ran the trial determined drug didn't work and that it wasn't commercially viable and they shut down the trials they terminated now defendants in this case bought the drug for $200,000 years later started up a different set of trials and they went in order to raise money for those trials discussed the trials that were run by the other company but instead of acknowledging what the other company concluded which we think they're required to do under the example given by the Supreme Court and on the care they counted the trials that the people people ran the trials thought failed so we why aren't those allegations time barred I mean you're talking about stuff I think from 2014 the district court didn't rule on a statute of limitations defense so we don't typically a ground for ruling by an appellate court the district court did not rule on that defense but we have alleged that the loss causation event relating to those statements occurred in 2018 we filed the complaint within two years of the 2018 loss causation event so things were timely or if it's a genera testing that you were just talking about was that something you did not know or could not have known until 2018 no if you're asking if you're asking me whether the truth on the market defense the answer is no and two it's not appropriate for a motion to dismiss we've cited numerous cases including cases from the Court of Appeals that have said even if the fact is publicly disclosed by the company in one of its own SEC filing that fact is not necessarily publicly available so these are issues which we really didn't get into in the district court level in the district court level certainly didn't prove the case I guess the two issues here before us right are the misleading whether this these opinions were misleading and and the and this the answer question and I take it that your argument is that this the answer question is largely answered by the nature of the misleading statement and that the statement that the misleading nature of the statement has to be derived from the so-called third way in which an opinion can be actionable spelled out in Omnicare the first is that the believer doesn't believe what he what what he's saying the second is when the believer along with the opinion gives a statement of fact in support of it explicitly and that statement of fact can be true proven false and the third which I think is an issue here is whether the circumstances of the opinion imply a certain level of activity as to how the opinion was arrived at in Judge Kagan's analysis and if that that opinion implies that it was arrived at by sort of a scientific approach or a series of trials or something of that sort then and the reasonable investor would expect that to be the case then I think that at that point the reasonable inspector a reasonable investor which would need to know all of the facts pertaining to that circumstance that's what you're arguing isn't it absolutely correct so so what they need here is one of the points you're making is that the defendants represented that the Lucentis trial was a Lucentis was an add-on here and that the Lucentis trials were they refer to one Lucentis trial when there were multiple Lucentis trials and this one happened to be an underperformer is that right yes and therefore and therefore and they not only did they wasn't a performer and if they disclosed all of the Lucentis trials one would get a very different picture or if they pointed out that the so it so it doesn't necessarily depend upon the prior circumstances and abandoning Lucentis it's how Lucentis was used in the nature in connection with these these opinions and it was one trial not many and it was an underperformer among the others right and the opinion was incorrect on on on on all of that yes your honor that's correct as I was saying there were two categories of statements that we alleged he was leading one was about the same it's about the prior company's trials but there were also the statements that they made about their own trials and those things they misled people because basically the control arm the arm that serves as the benchmark to come to see how well your drug is doing underperformed the material under performed so the benchmark is set lower yet they went out and told people no we've been underperformed those results were consistent with historically with the results of historical studies using Lucentis as a monotherapy which is you know Lucentis on itself but we've cited in particular doesn't also require that you look at the importance of context in other words these are not offhand opinions being given over drinks these are documents that appear in in in filings in which which which are to be taken seriously right correct there were press releases perspective silence so that they could raise money I mean these are these weren't off-the-cuff remarks they were carefully prepared undoubtedly lawyers carefully reviewed by the officers involved and the statements like the Lucentis monotherapy arm was consistent with historical studies using Lucentis as a monotherapy and that's just not true let you go well past your time you have three minutes of rebuttal and I think you have to turn to your adversary thank you your honor thank you thank your honor Misha Tatelin for the defendant plaintiffs asked this court to hold that they plausibly pleaded securities fraud simply because defendants didn't talk down their innovative initially promising efforts to reformulate squalanein into a more patient-friendly eyedrop form in combination with the sentence of injection this court your firm judge Prescott's well-considered holding the plaintiff's lawsuit they also state a claim notwithstanding counsel's odd misrepresentation of what judge Preston's decision stated now since Judge Walker yeah I have a question here because curiously enough in a case that was decided this year I had I had strikingly similar to this the Abramson case which I didn't see referred to in the briefs I think the briefs probably were filed before the decision came down there were no 28 J letters but anyway the so so here there's a question it seems to me of once you make a given opinion and that that one would normally expect to be able to generate opinion of that sort and yet those activities are not accurately are not you know are misleading then then then it at least is actionable as under the third prong of Omnicare am I not correct on that the runner that's a really important question if I could just have a minute or two to discuss the Abramson or the Newland case which the parties did submit 28 J letters on I think your honor will see that this case is diametrically opposed in a person and I think in order for your honor to understand that fundamental difference I would ask the court to please turn to JA 53 and 54 and you know I'd like to here with regard to the question that you're asking I think once we took a quick look at that I think you will see why this case is diametrically opposed to Abrams as your honor will recall in Abramson the problematic statements there was that there were that all that the the performance was consistent with all major site now the statement here was that the placebo arm was performed comparable to prior study now if your honors your honor would look at this chart and this is the the chart that they put together with the prior study you will see that the the prior studies all over the map the control arm in our tests ranges from 4.1 letter improvement to around 5.3 letter improvement now the chart that they put they put forward in their own amended complaint you have some that are 2.3 letters you have some that are six letters so just one question for you yeah I just want to get this the 4.1 which is right at the margin of error and the 5.3 which is over it were derived by a comparison with the with the single who sent a study right there was a single who sent a study that yielded those those numbers am I correct and that's not correct your honor that is not at all correct the numbers that are in our control the average of other the average of all the studies all right so what and I it's really important to understand this what this chart did is something that no scientists would ever do and they do not play a plausible any science would ever do what they did is they took a selection of Lucentis historical trials which were under different time frames different methodologies then they added up those numbers and created this unscientific back-of-the-envelope average which again they do not allege that any scientists would ever do and they said well we need to compare this unscientific back-of-the-envelope average of these hand-picked 17 studies to the placebo arm of the actual trials that were run I think if you were honored were to have a parallel to the new early trial those first trials were done by in under scientific conditions presumably it's just a question of whether those studies should have been disclosed at the time that the the Lucentis study that yielded the results that you should you you were pined on and you said were and supported your opinion were made so the idea here is that once there's a they say that you were the ones who did the cherry-picking you picked the one study that helped you and and the fact there were other studies out there that did not help you what we said is that our people arm results were consistent with the historical one and if your honor would look at this chart this is in their own complaint the numbers are all over the map some of them are significantly worse than our placebo arm and some of them are significantly better now to link back to Abramson the statement there was all major studies and I think what the court was concerned about was that that just wasn't true here you have studies that are all over the map it would be as if the the company and Abramson had said that it's consistent with some major studies but not others and then there was a range of results but in any event even if your honor is concerned about this aspect of this case because compared to Emerson here we have the additional element of scienti if your honor would think would remember back to the Abramson case there we had plausible allegations of time stocks there and we had in fact no argument about that I was wondering about that in the absence of stock sales can there be a security fraud case I would think there could be by just moving the price up and down and and issuing stock at various times depending upon the love the price level this is what happened here individual self-healing to sustain a securities fraud case the way the way that this court case law articulates is if you don't have something like time stock sales or individual benefit to the individual defendant then in order for intentionality or recklessness and and that is a very very demanding standard and that issue just well I wasn't in play in it okay let me stop you there if in fact they had access to all the prior squalamine studies which one would expect because for the $200,000 they got everything from from from genera if they had all that all that information in hand and and it revealed different a different outcome in terms of the placebo arm then why wouldn't why wouldn't that be reckless even if they didn't look at well you're right they should have looked at it and it's likely that they did because why would you buy a drug without early understanding all of the prior studies of the drug and whether or not to invest further on we restrict your honor I think your honor is misstating what their argument here is they're not talking about historical squalamine studies they're talking about the historical Lucenta study but but in any event yeah the statement that that that we think we did in fact look at those historical studies and the statement that we made is that the Lucentis control arm in our case was consistent with the broad range of those studies and we are here on a motion to dismiss and you're honored to look at the broad range of those studies that they themselves selected on ja53 and 54 and I would urge your honors to take a look at that because you will see there that that statement is entirely accurate and not even possibly misleading because the prior studies all over the map some of them are significantly better than the placebo arm some of them are significantly worse than the placebo arm the only way they get to their claimed material misstatement or omission is by doing this back-of-the-envelope non-scientific averaging where they add up all of the letters from these disparate kinds of studies and then they just divide by the number of letters and again you will find not a word in their amended complaint or even in their brief that there is anyone any scientist will ever do this averaging methodology let alone that disclosing this averaging not let alone that not disclosing this unscientific back-of-the-envelope average is so egregious that it amounts to an intent to deceive manipulate or defraud under the scienter standard yes you briefly I'm sorry could I ask you briefly about the clinically meaningful description I know your argument is that puffery but even if we can't agree on a precise scientific definition of what that means it certainly seems different from you know it's more generic puffery like strong or positive or you know the other types of things that are typically associated with that defense I think that's a fair honor I think that we would agree with judge Prescott when she said well you couldn't say that cyanide is clinically meaningful for curing the common cold and that's that SPA 13 we wouldn't take any issue with that but certainly they based their central theory and a complaint on this notion that you need more than four letter improvement to be clinically meaningful the only support they have there is a statement by a single doctor they don't have any FDA source or any other source that says that that is what clinically meaningful means in the what AMD context which is what we're talking about here thank your honors okay thank you very much mr. good now you have three minutes to rebuttal thank you your honor we obviously disagree with the defendants dispute the facts that we've alleged if you look at paragraph 82 and 84 you'll see the specific statements that the defendants made regarding the consistency of the trial results with the consistency of prior historical so historical studies understood to read the quote from paragraph 84 it's the last highlighted section quote importantly the visual acuity gains for the Lucentis model therapy arm were consistent with those observed in previous clinical studies using Lucentis monotherapy treatment area yes in paragraph 55 we went out and looked for every instance of a Lucentis monotherapy study we could find and these are the ones we could find we didn't cherry-pick we had no effort to try and deceive anyone if you look the range is all over the map that's our point they went out and said that their was consistent the number in Lucentis monotherapy arm was consistent with that when they just admitted that it was the numbers were all over the map and the test is what a reasonable investor would say so whether we should have plotted as well these specific study results weren't revealed or whether we get an average it's up to the court in any event we could we could read clean around that we should have been given me to amend if that were the issue then we should be granted leave to amend because the court didn't even address our request for leave to amend and on that point you didn't say what you would amend in your request right oh we did I mean one we would analyze the district court's decision we decided Second Circuit decisions to say when the party hasn't received an order from the court dismissing their claims they should be to amend based on the review of the order in addition we said any argument that we have made in our briefing that were either insufficiently detailed we were somehow not properly before the court because they rely on extrinsic evidence and we would speak to amend to address those deficiencies but we were never given a chance and it was an abuse of discretion for the court not to at least acknowledge why she was denied before your time runs out could I just ask you briefly to explain one more time your theory if I enter I just I'm not sure I understand it the theory is that the defendants had facts in their possession or access to those facts that contradicts their opinion and there are there many factors that go into this but under the conscious misbehavior and recklessness prong that was set forth in the Novak case we cite the admissions by the parties that they had access to this information and knew about it we cite the fact that they were talking about this very information so they're out there touting prior historical studies obviously they've looked at it so they have access to the facts and three they've argued that all this information was available to the public so that's an admission that if it were available to the public it was obviously available to them as well so they can't now deny that they had access to this information which we claim was omitted yes reckless you can establish intent to deceive by a recklessness going back many many years but we've cited the know that case is the kind of standard iteration of what the test for C enter it and here you have a situation where I guess the motive and opportunity aspect is what I'm seeing if you can explain there are a number of things there's a lot of an opportunity because the company was given Blenheim story letters by its auditors if it didn't raise this capital it would have went bankrupt started a class period it only had I believe this three million dollars three and a half million dollars on hand cash and over four years they conducted four offerings raising sixty two million dollars so they basically got twenty million dollars for twenty times rejected as a potential grounds for potential motive Walker pointed out there were no sales during the time there was no other behavior that suggested that they were deceiving with an intent to make personal profit well the company's C enter can be determined even if the individuals can't be the company C enter is an issue here and the company was about to go bankrupt it had going concern letters this is not every company is not receiving a going concern letter from the auditors if you go to the NASDAQ go to the New York Stock Exchange the overwhelming majority of companies are not receiving going concern letters from their from their auditors and there's also a little composer where he says look you can determine C enter because the party may have believed that they would ultimately succeed but they could still be reckless and not disclosing information and the example he gives is a person who knows money from his employer goes to the racetrack because he's got a sure thing now he obviously still had fraudulent intent when he took the money from his employer even though he thought he was going to be able to repay it and at the very least that's sufficient to establish the enter in this case today we will take your matter under advisement and and I will ask the clerk to adjourn court